UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE, | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:09-CV-2005 (JCH) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF MADISON, ET AL., | : | SEPTEMBER 22, 2010 |
|    Defendants. | : | |

**RULING RE: MOTION TO DISMISS (Doc. No. 21)**

## I. INTRODUCTION

Plaintiff filed this action in Connecticut Superior Court on November 24, 2009. He alleges that the Town of Madison, Connecticut, and Robert Nolan, formerly Acting Chief of Police for the Town of Madison (together, "defendants"), unlawfully published and disseminated information concerning the plaintiff's juvenile arrest record.[1] See Complaint ("Cmplt.") (Doc. No. 1, Exh. 1). On December 9, 2009, defendants appeared and removed the action to federal court pursuant to 28 U.S.C. sections 1446(b) and 1331. See Notice of Removal (Doc. No. 1). Defendants filed a Motion to Dismiss on February 12, 2010, alleging that Doe has failed to state a claim upon which relief may be granted. See Motion to Dismiss (Doc. No. 21).

## II. STANDARD OF REVIEW

In deciding this Motion to Dismiss, the court takes the allegations of the plaintiff's

---

[1] The plaintiff moved the court to proceed pseudonymously. See Motion for Continued Use of Pseudonym (Doc. No. 11). Upon an assessment of the relevant factors identified by the Second Circuit, see Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 190 (2d Cir. 2008), the court granted the Motion. See Ruling Granting Motion for Continued Use of Pseudonym (Doc. No. 30). In referencing Doe, the court uses the terms "he," "his," and "him" herein only on account of the fact that the parties do so in their memoranda, not on account of any knowledge of Doe's gender.

-1-

Complaint as true and construes them in a manner favorable to the plaintiff. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984). The court must draw all reasonable inferences in the plaintiff's favor. See, e.g., Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005); Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003) (internal citations omitted).

The court's analysis is guided by Fed. R. Civ. P. 8(a)(2) ("Rule 8(a)(2)"), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently held that Rule 8(a)(2) "requires factual allegations sufficient 'to raise a right to relief above the speculative level.'" Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). This "plausibility standard" in Twombly "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly).

## III. FACTUAL BACKGROUND

Doe was arrested on September 21, 2008, while enrolled at a residential treatment program for troubled adolescents in Madison, Connecticut. See Cmplt. at ¶ 2. At the time of his arrest, Doe was 17 years of age. Id. at ¶ 10. Because of Doe's age at the time of arrest, the criminal case against him was placed on the Superior Court's Youthful Offender Docket pursuant to Connecticut General Statute section 54-76b et seq. Doe was charged with two counts of assault in the third degree; the

charges were disposed of by way of a nolle prosequi that the Superior Court accepted on November 18, 2008.  Id. at ¶¶ 9, 12.

The Town of Madison is a municipality organized under the laws of the State of Connecticut.  Id. at ¶ 6.  The Town maintains a Police Department, within which Robert Nolan was employed as an officer.  Id. at ¶¶ 4-6.  At the time of Doe's 2008 arrest, Nolan was serving as Acting Chief of Police and was in a position of policy-making authority for the Town with respect to the Police Department's maintenance and dissemination of arrest records.  Id. at ¶ 5.

As part of Connecticut's Youthful Offender statutory scheme, the records of any youthful offender "shall be confidential and shall not be open to public inspection or be disclosed except as provided in this section . . . ."  CONN. GEN. STAT. § 54-76l. Nonetheless, the Town of Madison placed Doe's name, date of arrest, and criminal charges on its publicly available, internet-based "Arrest Log" within days of the September 21, 2008 arrest.  Id. at ¶ 14.  After becoming aware that the Town had placed this information on the Town's website, the parents of Doe notified Nolan of the wrongful publication.  Id. at ¶ 16.  Despite assurances from Nolan that Doe's name would be expunged from the Town's internet arrest log, information pertaining to Doe's arrest remained available on the Town's website throughout most of 2009.  Id. at ¶ 18.

Doe brought this action in November 2009, alleging in Count One that the defendants' conduct constituted an unlawful invasion of privacy under Connecticut law. In Count Two, Doe alleges that defendant Nolan's conduct constituted a violation of constitutionally-protected privacy rights pursuant to the First, Second, Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.  In Count

Three, Doe brings a failure-to-train claim pursuant to Connecticut law.

**IV.    DISCUSSION**

Defendants argue that Doe's Complaint should be dismissed in its entirety. Specifically, defendants contend that Count One, the state-law invasion of privacy claim, fails to state a claim upon which relief can be granted, both because Doe cannot satisfy the elements of an invasion of privacy claim and because the defendants are entitled to government immunity. See Mot. to Dismiss at 11-17. With respect to Count Two, defendants argue that Doe's privacy claims under the United States Constitution should be dismissed both because Doe has not alleged the violation of a constitutionally protected right, and because Nolan is protected by federal qualified immunity. See Mot. to Dismiss at 5-11. Finally, defendants assert that the failure-to-train claim should be dismissed because the damages caused to Doe were the result of the exercise of discretion, and, under Connecticut law, the Town is not liable for damages that stem from such discretionary acts. See Mot. to Dismiss at 18. The court will first address the federal constitutional claim.

    A.    Count Two: Constitutional Claim

In Count Two of his Complaint, Doe alleges that Nolan's intentional or deliberately indifferent publication of Doe's arrest record violated Doe's clearly established federal constitutional right "to be free of invasions of his reasonable expectations of privacy."[2] Cmplt. at 6. Defendants argue that Doe's allegations in this Count do not overcome the defense of qualified immunity, because they do not allege

---

[2] Although not specifically pled in the Complaint, the court assumes that Doe brings this claim pursuant to 42 U.S.C. § 1983.

that the defendants violated a clearly established constitutional right.  See Mot. to Dismiss at 3-18.

In an action under section 1983, "[q]ualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir. 2007) (internal quotation marks and citation omitted).  "To overcome the defense of qualified immunity, a plaintiff must show both (1) the violation of a constitutional right and (2) that that constitutional right was clearly established at the time of the alleged violation."  Huth v. Haslun, 598 F.3d 70, 73 (2d Cir. 2010) (citing Pearson v. Callahan, 129 S. Ct. 808, 816 (2009)).  As the Second Circuit has observed, the Supreme Court has abandoned its requirement that step one of the qualified immunity analysis must always be addressed before step two.  See Distiso v. Town of Wolcott, 352 F. App'x 478, 480-81 (2d Cir. 2009) (citing Pearson, 129 S. Ct. at 818).  Therefore, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson, 129 S. Ct. at 818.

In the instant case, the court need not address whether Doe suffered a violation of a constitutionally protected right, because the court concludes that, even if such a violation was suffered, that right was not clearly established for the purposes of qualified immunity.

The Second Circuit has identified factors that courts must consider in determining whether a constitutional right was clearly established at the time the alleged constitutional violation occurred:

> (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Scott v. Fischer, __ F.3d __, 2010 WL 2991085, at *4 (2d Cir., Aug. 2, 2010).

In applying these factors, "a court should consider the specific scope and nature of a defendant's qualified immunity claim. That is, a determination of whether the right at issue was 'clearly established' must be 'undertaken in light of the specific context of the case, not as a broad general proposition." Distiso, 352 F. App'x at 481 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). The contours of the right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). This does not require that the precise acts at issue have been previously been found to violate a constitutional right. The Second Circuit has held that, "Even if this or other circuit courts have not explicitly held a law or course of conduct to be unconstitutional, the unconstitutionality of that law or course of conduct will nonetheless be treated as clearly established if decisions by this or other courts 'clearly foreshadow a particular ruling on the issue' . . . ." Scott, 2010 WL 2991085, at *4 (quoting Varrone v. Bilotti, 123 F.3d 75, 79 (2d Cir. 1997)). In considering what is "clearly foreshadowed" by prior rulings, the court must consider the issue from a reasonable non-lawyer's perspective. "The question [for qualified immunity purposes] is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." Scott, 2010 WL 2991085, at *5 (quoting McCullough v. Wyandach Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir.

1999)).

In light of these standards, the court concludes that the constitutional right that was allegedly violated by Nolan's actions was not "clearly established" at the time Nolan took those actions, and Nolan is therefore entitled to qualified immunity. Although "it is by now well established that the Constitution accords individuals some right of privacy," Soucie v. County of Monroe, 736 F. Supp. 33, 35 (W.D.N.Y. 1990), "the exact nature and scope of the right to privacy has never been fully defined." Barry v. City of New York, 712 F.2d 1554, 1558 (2d Cir. 1983). Furthermore, while the Supreme Court has specifically acknowledged a constitutional right to privacy in protecting the confidentiality of personal matters, see, e.g., Whalen v. Roe, 429 U.S. 589, 599-600 (1977), the Second Circuit has made clear that "the nature and extent of the interest recognized in Whalen and Nixon, and the appropriate standard of review for alleged infringements of that interest, are unclear." Barry, 712 F.2d at 1559. In particular, it has not been clearly established whether that right encompasses a right to privacy in juvenile arrest records.

The United States Supreme Court has recognized that the Constitution protects two general kinds of privacy interests. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." Whalen, 429 U.S. at 599-600; see also Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994) (collecting cases and distinguishing the right to privacy as "confidentiality" from the right to privacy as "autonomy," and concluding that both are protected interests under the Constitution); Barry, 712 F.2d at 1559 (citing Whalen and noting that "individuals have a protectible interest in avoiding

-7-

disclosure of personal matters") (internal quotation marks omitted); Soucie, 736 F. Supp. at 35 (finding that it is "by now well established that the Constitution accords individuals some right of privacy," including the interest in avoiding disclosure of personal matters").[3] Doe's claim that the publication of his juvenile arrest records violated constitutionally protected privacy rights clearly implicates the first strand – the "confidentiality" component – of this constitutional right.

The right to confidentiality has been recognized with regard to certain categories of personal information. For example, the Second Circuit has repeatedly recognized a constitutionally protected right to privacy in medical records. See, e.g., O'Connor v. Pierson, 426 F.3d 187, 201 (2d Cir. 2005) ("[W]e easily hold that O'Connor had a protected privacy right in the medical records sought by the Board."); Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999) (recognizing "a constitutional right to maintain medical confidentiality"); Doe v. City of New York, 15 F.3d at 267 (HIV-positive individuals "clearly possess a constitutional right to privacy regarding their condition"). However, it bears noting that the recognition of this right did not immediately give rise to a "clearly established" right to privacy in medical records in all circumstances. See Gill v. DeFrank, 8 F. App'x 35, 37 (2d Cir. 2001) (holding that, as of 1997, three years after Doe v. City of New York, it was not yet clearly established for qualified immunity purposes that the right to privacy regarding HIV-status applied to prison inmates).

---

[3] Defendants originally asserted that the Constitution only protected those privacy interests that can be classified as "autonomy interests." See Mot. to Dismiss at 5-9 (relying heavily on Paul v. Davis, 424 U.S. 693 (1975)). Doe notes, however, that Paul was subsequently modified by Whalen, and defendants now concede that the scope of the privacy right now includes "the disclosure of personal matters." Reply Memorandum (Doc. No. 41) at 2. Defendants now allege that Doe's interests do not fall within the scope of those "confidentiality interests" that receive constitutional protection. Id.

The Second Circuit has also recognized a constitutional right to privacy with respect to certain financial information. Eisenbud v. Suffolk County, 841 F.2d 42, 45 (2d Cir. 1988); Barry, 712 F.2d at 1559. The majority of the circuits have recognized a similar right. See Denius v. Dunlap, 209 F.3d 944, 957 (7th Cir. 2000) (noting that "seven of our sister circuits have found that the constitutional right of privacy covers some financial disclosures"). Yet, when the Seventh Circuit joined this majority, it still held that the right was not yet "clearly established" for qualified immunity purposes. Id. at 958 ("While there was a trend among the majority of circuits in this direction, the conclusion was not unanimous. Therefore, we do not find that the law in this area was so clearly defined that a government official can be charged with its knowledge.").

It is far less clear whether the constitutional right to confidentiality extends to juvenile records, including juvenile records protected by state law. Whether or not such a right exists, it cannot be said to be clearly established by existing case law in this or other circuits. Neither the Supreme Court, nor the Second Circuit, has recognized such a right. Indeed, there are strains in the Supreme Court's decisional law that could be taken to cast doubt–admittedly, very indirectly–on such a right. See Smith v. Daily Mail Pub. Co., 443 U.S. 97, 104 (1979) (holding that a state criminal law prohibiting publication of juvenile records could not be applied to a newspaper because "the constitutional right [created by the First Amendment] must prevail over the state's interest in protecting juveniles"); Paul v. Davis, 424 U.S. 693, 712-14 (1976) (declining to recognize a constitutional privacy right against the state's publication of "a record of an official act such as an arrest"); Davis v. Alaska, 415 U.S. 308, 319-20 (1974) (describing the "interest in protecting the confidentiality of a juvenile offender's record"

as a matter of "State policy" and holding that it gives way to the constitutional right to confrontation).

Courts of appeal in other circuits have declined to hold that the Constitution protects the confidentiality of juvenile records, even where a state statute establishes such confidentiality. See U.S. v. T.E.S., 165 F.3d 913, 1998 WL 774144 (4th Cir., Nov. 6, 1998) (unpublished) (holding that a Maryland statute limiting disclosure of juvenile court records did not give rise to a constitutionally protected privacy interest in juvenile court records); U.S. v. Jiles, 658 F.2d 194, 199-200 (3d Cir. 1981) (disclosure of photograph in appellee's juvenile records in violation of state law "did not violate appellee's constitutional rights"); J.P. v. DeSanti, 653 F.2d 1080, 1088 (6th Cir. 1981) (observing that "the fact that the Constitution protects several specific aspects of individual privacy does not mean that it protects all aspects of individual privacy," and concluding that the plaintiff did not enjoy a "constitutional right to non-disclosure of juvenile court records").

Moreover, the district courts within this circuit have disagreed over the precise issue of whether there is a constitutional right to privacy in the confidentiality of a state-protected youthful offender file. Compare Soucie v. County of Monroe, 736 F. Supp. 33, 35 (W.D.N.Y. 1990) (maintaining constitutional privacy claim where plaintiff's presentence report was made public in violation of New York State's youthful offender statute, which provided that all official records and papers relating to a person adjudicated as a youthful offender shall remain confidential and may not be made publicly available) with McCrary v. Jetter, 665 F. Supp. 182, 186 (E.D.N.Y. 1987) (dismissing constitutional claim brought pursuant to section 1983 after a police officer

retrieved photographs from the plaintiff's youthful offender file because plaintiff's allegations did "not touch upon those areas which have been found to involve the right of privacy").[4]

Doe argues that, even if the constitutional right to confidentiality in juvenile records is not clearly established as a general proposition, he can overcome the defense of qualified immunity. Doe correctly points out that "officials may lose their immunity by violating clearly established statutory rights," and he contends that Nolan has done so here by violating CONN. GEN. STAT. section 54-76l. Memorandum in Opposition (Doc. No. 36) ("Opp.") at 24-5 (quoting Davis v. Scherer, 468 U.S. 183, 194 (1984)) (internal quotation omitted). However, section 1983 does not provide a cause of action in federal court for the violation of a state statutory right. Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) ("To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right' . . .") (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)); Powers v. Coe, 728 F.2d 97, 105 (2d Cir.

---

[4] The New York State statute at the center of both Soucie and McCrary is similar to section 54-76l of the Connecticut General Statutes. The relevant section of the New York statute provided, in its entirety, that:

> Except where specifically required or permitted by statute or upon specific authorization of the court, all official records and papers, whether on file with the court, a police agency or the division of criminal justice services, relating to a case involving a youth who has been adjudicated a youthful offender, are confidential and may not be made available to any person or public or private agency, other than an institution to which such youth has been committed, the division of parole and a probation department of this state that requires such official records and papers for the purpose of carrying out duties specifically authorized by law.

Soucie, 736 F. Supp. at 36 (quoting N.Y. CRIM. PRAC. LAW § 720.35(2)); accord McCrary, 665 F. Supp. at 184 (quoting portions of N.Y. CRIM. PRAC. LAW § 720.35(2)).

1984) ("It is axiomatic that violations of state law alone are insufficient to state a claim for section 1983 relief.").

Moreover, Davis v. Scherer, the case relied upon by Doe, makes clear that, in order to overcome qualified immunity, a plaintiff must allege a violation of a clearly established <u>federal</u> right, not merely a clearly established state "right" which might form the basis of a federal constitutional right.  Davis, 468 U.S. at 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that <u>those</u> rights were clearly established at the time of the conduct at issue.") (emphasis added).  A unanimous Court amplified this holding in Elder v. Holloway:

> Is qualified immunity defeated where a defendant violates <u>any</u> clearly established duty, including one under state law, or must the clearly established right be the federal right on which the claim for relief is based?  The Court held the latter.

510 U.S. 510, 515 (1994) (citing Davis, 468 U.S. at 197).  Therefore, Doe cannot rely solely on the violation of CONN. GEN. STAT. section 54-76l to overcome qualified immunity in a suit to vindicate a federal right.

Perhaps cognizant of this, Doe also asserts that the "clearly established [state] statutory right creates a constitutional right" in this case.  Opp. at 24 (citing Paul v. Davis, 424 U.S. 693, 710-12 (1976), and Hewitt v. Helms, 459 U.S. 460 (1983)).  Thus, Doe seeks to invoke a federal right to overcome qualified immunity.  The problem, again, is that this federal right, and not merely the underlying state statute, must be clearly established.  And it is far from clearly established that the Connecticut statue at issue here gives rise to a constitutional right.  No court has ever so held with respect to

this statute, and as the cases cited above show, other courts have held that comparable state statutes do not give rise to a constitutionally protected privacy right. See, supra, at 9-11.

The authorities cited by Doe do not show otherwise. Both Paul and Hewitt merely explain that, in some cases, a state statute can confer a "liberty" or "property" interest that the state cannot then take away without due process. See Paul, 424 U.S. at 710-12. Neither case supports the claim that the Connecticut statute at issue here creates such an interest. In Paul, the Supreme Court reiterated that, "Violation of local law does not necessarily mean that federal rights have been invaded," id. at 700 (quoting Screws v. United States, 325 U.S. 91, 108-09 (1945)), and the Court held that state law did not give rise to a federal right against the publication of one's arrest record. Paul, 424 U.S. at 710-14. As for Hewitt, a case dealing with prison regulation, the approach taken there to identifying state-created liberty and property interests has been expressly repudiated. See Sandin v. Conner, 515 U.S. 472, 481-83 (1995) (explaining the Court's "abandonment of Hewitt's methodology" because that methodology "strayed from the real concerns undergirding the liberty protected by the Due Process Clause").

Those courts that have addressed the issue have generally found that state statutes protecting the confidentiality of juvenile records do not give rise to a constitutionally protected liberty or property interest. See, e.g., Jiles, 658 F.2d at 200 ("the state created a procedure to protect juveniles from having their juvenile criminal records released to the public. . . . This safeguard, while helpful to the state in ensuring that such records would not be released to the general public, did not create a property

-13-

interest on behalf of [those with juvenile records]."); U.S. v. T.E.S., 1988 WL 774144, at *2-3 (rejecting the argument that a Maryland confidentiality statute at issue created a protected "liberty" interest); McCrary, 665 F. Supp. at 184-85.

In view of the foregoing authorities, it cannot be said that a constitutional right against disclosure of Doe's youthful offender information "was defined with reasonable specificity," that "Supreme Court or court of appeals case law supports the existence of the right in question," or that, under preexisting federal law, "a reasonable defendant official would have understood that his or her acts were unlawful." Scott, 2010 WL 2991085, at *4. Thus, the court cannot conclude that prior Supreme Court and court of appeals case law on the right to privacy "clearly foreshadow," id. at *4, its coverage of the circumstances presented in this case. Therefore, Doe does not allege that Nolan violated a constitutional right that is "clearly established," and Nolan is entitled to qualified immunity with respect to the constitutional claim contained within Count Two of the Complaint.

B. Remaining Counts

In light of the court's conclusion with regard to the only federal claim that Doe asserts in his Complaint, it is the court's conclusion that Connecticut state court is the proper forum to resolve the remaining issues in this case. Section 1367(c) of title 28 of the United States Code provides that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ." 28 U.S.C. § 1367. See also Kidder, Peabody & Co. v. Maxus Energy Corp., 925 F.2d 556, 563 (2d Cir. 1991) ("The decision whether to exercise pendent jurisdiction is within the discretion of the

district court. In exercising that discretion, a district court is required to 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction'") (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

The relevant factors favor remanding the remaining claims in this case. This court has not devoted a significant amount of judicial resources to this matter sufficient to justify retaining the case. Furthermore, the arguments defendants make with regard to the state law claims in their Motion to Dismiss raise issues with regard to Connecticut statutes. It is thus this court's conclusion that, in the interests of fairness and comity, the Connecticut state court is in the most appropriate position to address those claims.

**V.   CONCLUSION**

For the foregoing reasons, the defendants' Motion to Dismiss (Doc. No. 21) is **GRANTED** with respect to Count Two of the Complaint. The remaining claims are remanded to Connecticut Superior Court. The Clerk is thereafter directed to close the case.

**SO ORDERED**.

Dated at Bridgeport, Connecticut this 22nd day of September, 2010.


                                                 /s/ Janet C. Hall
                                                 Janet C. Hall
                                                 United States District Judge